WILLIAM B. THORPE, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Passengers upon a railroad, taking a drawing-room car, have a right to assume that they are there under a contract with the railroad corporation, and that the servants in charge of the car are its servants, for whose acts in the discharge of their duty it is liable.

Plaintiff took passage on one of defendant's trains; finding no vacant seat in the ordinary car, he went into a drawing-room car, and when called upon by the porter to pay the extra charge for a seat in that car, refused to pay, for the reason that he could find no seat elsewhere, but expressed a willingness to leave when he could get a seat in the other cars; the porter thereupon attempted to eject him. The drawing-room cars were owned by one W., and the porter was in his employ. The cars were run under a contract between defendant and W., by which the latter agreed to place the cars on the road at his own cost, and to pay the employes, who were to have charge, free of interference from the conductor of the train, he being entitled, however, to enter the cars for the collection of fares, etc. It was made the duty of the conductors and porters of said cars to assist the train conductor in enforcing order. It did not appear that there was any regulation known to plaintiff prohibiting a passenger not intending to ride in a drawing-room car from entering it under such circumstances. In an action to recover damages for the assault, *held*, that the porter was to be regarded, in respect to his dealings with passengers, as defendant's servant, and it was responsible for his acts to the same extent as if he was directly employed by it; and that the facts justified a verdict for plaintiff.

It appeared that one or more of the seats in the ordinary cars were occupied by passengers' luggage. A number of passengers were standing up in the passage-ways, and it did not appear that the seats so occupied by luggage would have been sufficient for the standing passengers. *Held,* that it was not the duty of plaintiff, under the circumstances, to have asked the train conductor for a seat before passing into the drawing-room car.

(Argued February 10, 1879; decided March 18, 1879.)

· APPEAL from judgment of the General Term of the Supreme Court, of the third judicial department, affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 13 Hun, 70.)

This action was brought to recover damages for an assault alleged to have been committed by one of defendant's servants, in attempting to eject plaintiff from a car of a train upon its road, on which train plaintiff was a passenger.

The facts appear sufficiently in the opinion.

*Edward Harris,* for appellant. The porter of the drawing-room car was not defendant's servant, and for that reason plaintiff should have been nonsuited. (Story on Part., § 49; 3 Kent's Com., note *b,* and cases cited; *Burke* v. *Eckart,* 1 Den., 340; S. C., 3 Comst., 137; *Lewis* v. *Greider,* 51 N. Y., 231; *Leggett* v. *Hyde,* 58 id., 272; *Blair* v. *Erie R'y.* 65 id., 313.) This defendant is not liable for the wrongful acts of Wagner or of his agents. (*Morely* v. *Dunscombe,* Ct. of Q. B., 11 Law Times, 199; *Powles* v. *Hider,* 6 Ellis & Blackburn, 207.) The court erred in charging the jury that if plaintiff could find no seat in the ordinary car, he was justified in passing into the drawing-room car. (*Cox* v. *The Defendant,* 6 N. Y. Sup. Ct., 405; *Peck* v. *Same,* id.)

*Rollin Tracy,* for respondent. Defendant was liable for the act of the porter, and was entitled to recover damages in this action. (*Rounds* v. *Del., Lack. and West. R. R. Co.,* 64 N. Y., 129; *Peck* v. *N. Y. C. and H. R. R. R.,* 5 N.

Y. W. Dig., 201; *Cosgrove* v. *Ogden*, 49 N. Y., 255; *Jackson* v. *Second Ave. R. R. Co.*, 47 id., 274; *Higgins* v. *Watervelt Turnpike Co.*, 46 id., 23; *Chase* v. *N. Y. C. and H. R. R. R. Co.*, 26 id., 528; *Sanford* v. *Eighth Ave. R. R. Co.*, 23 id., 343; *Meyer* v. *Second Ave. R. R. Co.*, 8 Bosw., 305; *Ward* v. *Panama R. R. Co.*, 17 N. Y., 362; *Althorf* v. *Wolfe*, 22 id., 361; *Hibbard* v. *N. Y. and E. R. R.*, 15 id., 455; 2 Redfield on Railways, 502; *Isaacs* v. *Third Ave. R. R. Co.*, 47 N. Y., 126; *Wright* v. *Wilcox*, 19 Wend., 343.) Even if plaintiff had actual knowledge or notice of the existence and provisions of defendant's contract with Wagner, it could not affect his right to recover. (*Blossom* v. *Dodd*, 43 N. Y., 264; *Dorr* v. *N. Y. Steam Nav. Co.*, 11 id., 485; *Hollister* v. *Nowlen*, 19 Wend., 234; *Cole* v. *Goodwin*, 19 id., 251; *Kennedy* v. *St. L., Vand. and Terre Haute R. R. Co.*, 62 Ill., 395; *R. R. Co.* v. *Barron*, 5 Wall., 104; *Chicago and St. Paul R. R. Co.* v. *McCarthy*, 20 Ill., 285; *Ohio, etc., R. R. Co.* v. *Dunbar*, 22 id., 623; *Chicago R. I. R. R.* v. *Whipple*, 22 id., 105; *Nelson* v. *Vermont, etc., R. R. Co.*, 25 Vt., 77; *McElory* v. *Nashua R. R. Co.*, 4 Cush., 400; *Macon and Augusta R. R. Co.* ads. *Mayes*, 49 Ga., 355; *New York and Maryland Line R. R. Co.* ads. *Winans*, 17 How., 30; *R. R. Co.* v. *Brown*, 17 Wall., 445, 450, 451.) Plaintiff, when he found the seats filled with passengers and their luggage, was not bound to solicit a seat of the occupant or to remove the luggage before going into the drawing-room car. *McIntyre* v. *N. Y. C. R. R. Co.*, 37 N. Y., 287; *Willis* v. *Long Island R. R. Co.*, 34 id., 670, 674, 681; *Sanford* v. *Eighth Ave. R. R. Co.*, 23 id., 343.) Defendant was not entitled to any extra fare from plaintiff. (Laws 1853, chap. 76, § 7; *Chase* v. *N. Y. C. R. R. Co.*, 26 N. Y., 523; 1 Wall., 25; 16 Ind., 172.)

ANDREWS, J. The defendant's counsel, upon the conclusion of the evidence, moved for a nonsuit, on the ground that the porter, by whom the alleged assault was committed,

was not the servant of the defendant, and that the defendant was not therefore responsible for his acts.

The plaintiff was a passenger on the defendant's train. He entered the cars at Syracuse, with the intention of riding in one of the ordinary cars to Auburn. He passed through the two ordinary cars attached to the train, and finding no vacant seat passed into the drawing-room car, and when called upon by the porter to pay the extra charge for a seat in that car, declined to pay the sum demanded, for the reason that he could find no seat elsewhere, but expressed a willingness to leave the car, whenever he could get a seat in the other cars. The porter thereupon attempted to eject the plaintiff from the car, and for this assault the action is brought.

The proof shows that all the seats in the two ordinary cars were occupied, and that several persons were compelled to stand in the passageway, and others were seated on the wood-box, for want of other accommodation. The ground upon which the motion for nonsuit was made assumes that, under the circumstances, the plaintiff was justified in going into the drawing-room car, and that the act of the porter, in attempting to eject him, was an unjustifiable assault, but the claim is made, and the exception to the refusal to nonsuit is sought to be supported, on the ground that the porter was the servant of Wagner, the owner of the drawing-room car, and was not, in fact or law, the servant of the defendant.

If the right of the plaintiff to maintain this action depends upon the existence of the conventional relation of master and servant, between the defendant and the porter at the time of the transaction in question, the action cannot be maintained. The porter was in fact the servant of Wagner. Wagner employed him, paid him, and could at any time discharge him. His duty was to take charge of the drawing-room car on the train, assign seats to passengers desiring seats therein, and collect and receive the sums charged therefor. He was instructed by Wagner to remove from the car persons who refused to pay the extra fare, and looking at the contract of

employment only, he was, in attempting to remove the plaintiff, acting as Wagner's servant.

The general principle is well settled, that to make one person responsible for the negligent or tortious act of another, the relation of principal and agent, or master and servant, must be shown to have existed at the time, and in respect to the transaction between the wrongdoer and the person sought to be charged. Upon this relation the doctrine of *respondeat superior* rests: (*Laugher* v. *Pointer*, 5 B. & C., 547; *Blake* v. *Ferris*, 1 Seld., 48.) The defendant relies upon the absence of this relation between the porter and the company as conclusive against its liability for his act. But we are of opinion that this defense is not available to the defendant, or rather that the persons in charge of the drawing-room car are to be regarded and treated, in respect of their dealings with passengers, as the servants of the defendant, and that the defendant is responsible for their acts to the same extent as if they were directly employed by the company.

The contract between the company and Wagner was proved. By this contract Wagner agreed, at his own cost, to place upon the defendant's road as many drawing-room cars as should be required for the accommodation of the defendant's traffic, and to do certain specified repairs, and provide conductors and porters, who were to have charge of the distribution of compartments and seats therein, free from interference by the conductor of the train. The train conductors, by the terms of the agreement, are entitled at all times to enter the cars, for the purpose of collecting fares of passengers, or for any purpose connected with the management of the train, and it is made the duty of the conductors and porters of the drawing-room cars to assist the train conductors in enforcing the order and discipline of the road. The contract provides, for a monthly accounting by Wagner to the defendant of the receipts and earnings of the business, and the payment by him to the defendant of twenty *per cent* of the gross earnings, after deducting license fees

paid for any patented inventions used in the cars, which payment is expressed to be in consideration of the service performed by the defendant in hauling the cars, furnishing fuel and lights therefor, and repairing the trucks, brakes and exterior of the cars, as provided in the agreement. The agreement reserves to the defendant the right to determine the location of the drawing-room cars in its trains.

The business of running drawing-room cars in connection with ordinary passenger cars has become one of the common incidents of passenger traffic on the leading railroads of the country. These cars are mingled with the other cars of the company, and are open to all who desire to enter them, and who are willing to pay a sum in addition to the ordinary fare, for the special accommodation afforded by them. They are put on presumably in the interest of the road. They form a part of the train, and the manner of conducting the business is an invitation by the company to the public to use them, upon the condition of paying the extra compensation charged. Passengers cannot know what private or special arrangement, if any, exists between the company and third persons, under which this part of the business is conducted, and they have, we think, in taking one of these cars, a right to assume that they are there under a contract with the company, and that the servants in charge of the drawing-room cars are its servants. Otherwise there would be two separate contracts in the case of each passenger in these cars, one with the company, and one with Wagner. Such a condition of things would involve a confusion of rights and obligations, and divide a responsibility which ought to be single and definite. Take the case of a passenger in a drawing-room car who should be burned by the negligent upsetting or breaking of a lamp by the porter, or the case of a passenger in a sleeping car, injured by the porter's negligence. Is the passenger, in these or other similar cases which might be supposed, to be turned over, for his remedy, against Wagner, on the ground that the servant who caused the injury was his servant, and not the defendant's? The public interest,

and due protection to the rights of passengers, require that the railroad company which is exercising the franchise of operating the road for the carriage of passengers, should be charged with and responsible for the management of the train, and that all persons employed thereon should, as to passengers, be deemed to be the servants of the corporation.

The statute for the incorporation of railroad companies contains various provisions regulating the manner in which the discipline of the train and the rights of the companies against passengers are to be enforced, and they assume that the servants employed on the train are the servants of the company. The thirtieth section (Laws of 1850, chap. 140) requires that all servants of the corporation employed on a passenger train shall wear a badge, which shall indicate their office, and prohibits any officer or servant, without such badge, from meddling or interfering with any passenger, his baggage or property. The thirty-sixth section authorizes the conductors or servants of the corporation to put passengers off the cars who shall refuse to pay their fare. These sections imply that the persons charged with the duty of enforcing the discipline of the train are the servants of the corporation.

The servants employed in the Wagner car are, by the contract between him and the defendant, required to assist the train conductors in enforcing the discipline of the road. It is not contended, indeed the inference from the evidence is clear, that the practice is for the conductor and porter of the drawing-room cars to enforce the regulations under which passengers are permitted to use them, and that they act, in so doing, with the knowledge of the defendant. Their acts, in the execution of this duty, upon every reason of policy and propriety, should be deemed to be the acts of the company. The Legislature, in 1858, authorized sleeping cars to be put upon a railroad by a patentee, with the consent of the company, and an extra charge to be made to passengers using them; but the act carefully provides that it should not be construed to exonerate the company from

the payment of damages for injuries, in the same way and to the same extent as if the cars were owned and provided by the company. (Laws of 1858, chap. 125.)

The claim of immunity from responsibility for the acts of the porter, urged on behalf of the defendant, cannot and ought not to be allowed, and the motion for nonsuit was, therefore, properly overruled.

A single additional question remains to be considered. The defendant's counsel requested the court to charge the jury that if the plaintiff, when he passed through the cars, saw that seats were occupied with luggage, it was his duty, when he met the conductor, to ask him for a seat, before passing into the drawing-room car. The court declined to so charge, and the defendant's counsel excepted.

We are of opinion that, in view of the facts in the case, the request was properly refused. There is some evidence tending to show that one or more of the seats in the ordinary cars were occupied by one person with his luggage, but it does not appear that if the luggage from the seats so occupied had been removed, there would have been sufficient seats for the passengers standing in the passage-way, when the plaintiff passed through the cars. The inference from the evidence is that there would not have been. Under these circumstances, the plaintiff cannot be deemed a wrong-doer, in passing into the drawing-room car and taking a seat, until seats in the other cars should be vacated. It was the duty of the defendant to furnish him a seat. His omission to speak to the conductor and for a seat, when he first met him, may reasonably be accounted for, on the ground that he supposed that such a request, at that time, would be unavailing. So far as appears, there was no regulation — at least none known to the plaintiff, — prohibiting a passenger not intending to ride in a drawing-room car from entering it for a temporary purpose, under circumstances such as existed in this case.

If the plaintiff was mistaken as to the rules, his mistake did not convert him into a trespasser, and on the first

opportunity after entering the car, he informed the servant in charge that he would leave the car, as soon as a seat in the other car was provided. (See *Willis* v. *Long Island R. R. Co.*, 34 N. Y., 670.)

We think there was no error committed on the trial, and the judgment should therefore be affirmed.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.