CHARLES F. ULRICH, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Plaintiff while traveling on a regular train on defendant's railroad on a free pass, was injured by a collision caused by defendant's negligence. Upon the pass was an indorsement to the effect that, in consideration of receiving it, the holder assumed all risks of accident and agreed that the company should "not be liable under any circumstances, whether by negligence of their agents or otherwise," for injury to his person or property, and that in the use of the pass he would "not consider the company as a common carrier or liable to him as such." In an action to recover damages for the injury, it appeared that plaintiff had purchased a ticket entitling him to a seat in a drawing-room car upon the train, from the drawing-room car conductor. It was stated in the

check given for the seat that it " with passage ticket or fare" would be taken up by the train conductor. *Held,* that this did not make plaintiff a passenger for hire and did not have the effect to annul or vary, for the trip, the contract made by the pass and its indorsement; that assuming such a purchase of a seat ticket has the same force and effect as if purchased from the train conductor (as to which *quære*), it had no effect upon the status of the purchaser as a passenger; that the purchase of a right to enjoy particular and exclusive accommodations during the trip, whether made with defendant or otherwise, did not entitle him to transportation, and so long as the pass was used to secure transportation, did not in any way affect the validity of the agreement expressed therein.

*Thorpe* v. *N. Y. C. & H. R. R. R. Co.* (76 N. Y. 402) distinguished.

*Ulrich* v. *N. Y. C. & H. R. R. R. Co.* (13 Daly, 129) reversed.

(Argued December 9, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made November 5, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial. (Reported below, 13 Daly, 129.)

The material facts are stated in the opinion.

*Frank Loomis* for appellant. An individual transported over the route of a carrier of passengers may debar himself by a contract founded upon a sufficient consideration from any claim for damages for injuries to his person or property, occasioned by the negligence of such corporation during the course of transportation. (*Seybolt* v. *N. Y., L. E. & W. R. R. Co.,* 95 N. Y. 562, 572, 573.) No one is liable to the plaintiff, he having debarred himself by using the free pass, from the right of recovery for the injuries he sustained. (*Seybolt* v. *N. Y., L. E. & W. R. R. Co., supra.*)

*W. W. Rowley* for respondent. The train upon which the respondent took passage was the regular appointed train of the appellant from Albany to New York. All the coaches, cars, etc., formed but one train, under its absolute control, and presumedly in its interests and for its benefits (*Thorpe* v.

*N. Y. C. & H. R. R. R. Co.,* 76 N. Y. 402.) All the train-men, including the conductor and porter of the drawing-room cars, were servants of the appellant, and any act of theirs in connection with a passenger, was the act of appellant. (*Thorp's Case, supra; De Long* v. *Del., Lack. & W. R. R. Co.,* 37 Hun, 282; *Penn. R. R. Co.* v. *Roy,* 102 U. S. 451; *Columbus, etc., R. R. Co.* v. *Wolrath,* 38 Ohio St. 461; *Kinsley* v. *R. R. Co.,* 125 Mass. 54; 3 Wood's Railway Law, 1442, 1444; *Sprague* v. *Smith,* 29 Vt. 421; *Kain* v. *Smith,* 80 N. Y. 473.) The appellant cannot now introduce secret contracts or instructions to the injury of the respondent. The apparent authority is the real authority. (Story Agency, § 93; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.,* 106 N. Y. 195; *Walsh* v. *Hartford Fire Ins. Co.,* 73 N. Y. 5; *Thurman* v. *Wells,* 18 Barb. 519; *Isaacson* v. *N. Y. C. & H. R. R. R. Co.,* 94 N. Y. 278; *Stilwell* v. *Mutual Life Ins. Co.,* 72 id. 392; *Murray* v. *Binninger,* 3 Keyes, 107; *Ellwell* v. *Chamberlain,* 31 N. Y. 619; *Bennett* v. *Judson,* 21 id. 238; *Leslie* v. *Wiley,* 47 id. 648.) The appellant is estopped from asserting that some other party than itself is liable to the respondent. (Best on Presumptions, 68; *Arent* v. *Squire,* 1 Daly, 347; 1 Greenleaf Ev., § 207.) The notice upon the pass simply relieves the company from liabilities for injuries occasioned by negligence of its agents; it does not exempt the company from its own negligence. (*Mynard* v. *Syracuse, etc., R. R. Co.,* 71 N. Y. 180, 185.) The collision and injury of respondent being established, the presumption of negligence rested upon the appellant. (*Seybolt* v. *N. Y., L. E. & W. R. R. Co.,* 95 N. Y. 562.)

RUGER, Ch. J. This action is brought by the plaintiff to recover damages of the defendant, for injuries to his person and property, occasioned by a collision on the defendant's rail-road near Spuyten Duyvil in January, 1882, while he was riding from Albany to New York on a regular train of the defendant's railroad. The distance from Albany to New

York is about one hundred and fifty miles and the regular fare is $3.10.

It will be assumed in the consideration of the case, that the collision occurred through the negligence of the defendant, and that, in the absence of the special agreement hereinafter referred to, the defendant would have been liable for the injuries suffered by the plaintiff. The plaintiff, however, was at the time riding upon a free pass, issued to him by the company in 1881, which had been duly extended to cover the period during which the injuries were sustained. This pass bore the following printed indorsement: "In consideration of receiving this ticket, the person who uses it voluntarily assumes all risk of accident and expressly agrees that the company shall not be liable under any circumstances, whether by negligence of their agents, or otherwise, for any injury to his person or for any loss or injury to his property, and that as for him, in the use of this ticket he will not consider the company as common carriers or liable to him as such." It is conceded that the plaintiff used this pass on the trip during which the accident occurred, and exhibited it to the conductor when his passage ticket was demanded of him. Unless the contract indicated by this pass and its indorsements, has been rescinded or annulled by some other valid contract between the parties, it is clear that their rights and liabilities must be governed by its provisions. It is not claimed by the respondent but that if this contract was in full force and the plaintiff was actually riding at the time of the accident solely by virtue of it, that it would control the liability of the defendant and exempt it wholly therefrom. (*Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562.) It is claimed, however, that by reason of the purchase of a ticket entitling him to the use and occupation of a particular seat during the passage in the drawing-room car "Empire," he became a passenger for hire, and that the contract expressed in the pass must be deemed to have been abrogated and annulled, to a certain extent by the new contract.

By reference to the opinion delivered in the court below

upon a former appeal of this case, and which is contained in the appeal book, we infer that the judgment in favor of the plaintiff was affirmed, upon the theory that the contract for a seat in the drawing-room car was made with the agents of the defendant, and that such a contract subverted or modified for this trip, that formed by the pass and its indorsements.

It is not pretended but that the plaintiff secured his transportation on this occasion by virtue of his pass, but it is inferentially argued that the contract for the purchase of a seat annulled the express condition upon which the pass was issued to the plaintiff, while it left the pass in full vigor so far as it gave the plaintiff a right to be carried on defendant's road from Albany to New York. Perhaps the language used by the court below will afford a more accurate view of its position, viz.: " The defendant has taken money from the plaintiff for carrying him, and it has no right to say that he was a free passenger, and to ask the court to incorporate into the drawing-room ticket the provisions of the free pass."

The vice of this argument is in the assumption that " the defendant has taken money from the plaintiff for carrying him." Assuming for the purposes of the argument that the purchase, by a passenger on a train, of a drawing-room ticket from a drawing-room car conductor, has the same force and effect as though purchased from the train conductor, of which there is much doubt, we yet think that such a purchase has no effect upon the status of the purchaser as a passenger. The contracts of a railroad corporation must be construed by the same rules which apply to those of other parties, and must be given the force and effect which was within the contemplation and understanding of the parties when they were made. The inquiry then is, what was the intention of the parties in the transaction culminating in the sale of a seat in the drawing-room car for the trip.

It is undoubtedly true that if the plaintiff had paid his fare, or had made a valid contract with the defendant for passage,

which was inconsistent with the provisions of the pass, it might be inferred that the parties intended by such an arrangement to rescind the contract previously existing between them, at least to the extent of any inconsistency. But we are of the opinion that the transaction in question had no such effect, and that the purchase of a right to enjoy particular and exclusive accommodations during the trip, whether made with the defendant, or otherwise, did not, so long as the pass was used to secure transportation, in any way affect the validity of the agreement expressed therein. Indeed, the terms printed upon the ticket by which the plaintiff secured his seat in the drawing room car, repel a contrary inference and plainly indicate that the plaintiff was required to rely for transportation upon his pass, for it is there stated that " this check, with *passage ticket or fare* will be taken up by the conductor in charge of train."

The inference is irresistible that the ticket for a seat had no relation to his right to transportation, but that the latter was expected to be made the subject of a distinct and separate contract to be formed by agreement between the parties. Instead of its being supposed by the parties that the purchase of a seat modified the previous contract, it was expressly understood that the passenger was to secure the right of transportation by some arrangement already or thereafter to be made with the conductor of the train. This he did by the production and presentation of the pass to the conductor and its recognition by him, and by the express provisions of the contract embodied therein he forfeited his right to claim damages for injuries suffered, either to his person or property, during that trip.

The contract for a seat did not make the purchaser a passenger in any sense, but it simply provided that if the purchaser secured a right to ride on the train, he could also enjoy the advantages of a specified seat during the trip, if he so desired. The securing of a right to ride on the train, was the condition upon which he became entitled to occupy the specified seat during the trip, and non-compliance with this condition

would clearly preclude the purchaser from deriving any advantage from his purchase of the drawing-room ticket.

We can discover no principle upon which it can be held that the contract expressed by the pass should be considered rescinded or inoperative. Certainly, no express agreement was made to that effect, and we think none can be implied from the transaction referred to.

It cannot be claimed that the purchase by a passenger of special and exclusive accommodations on a railroad train, not open to the enjoyment of passengers generally by virtue of their passage tickets, gives the purchaser a right to transportation, and yet the argument of the respondent implies that he had the right to use the pass to secure his transportation, and still repudiate the conditions upon which alone he was authorized to use it. The pass gave the plaintiff the right to enter any of the cars attached to the train and occupy a seat therein during the passage from Albany to New York, except certain cars set apart for special service and use. The pass gave the passenger no right to occupy a seat in such cars, and the money paid by the plaintiff to secure this seat had no relation to his right of transportation. The passenger could not have supposed that it did, for he not only used his pass for that purpose, but from the insignificance of the price paid for his seat as compared with the regular fare for such a trip, the idea is repelled that he supposed he was thereby securing transportation also.

It could not be contended for a moment that the holder of a drawing-room car ticket could, by force of such ticket alone, insist upon being carried over a railroad to his place of destination, or that the railroad company would be liable for damages for ejecting such holder from its cars for non-payment of fare, if he should refuse to pay the customary sum charged for transportation. No such rights are contemplated by the parties to such a transaction. The contract indicated by his purchase of a drawing-room seat certainly did not, by express terms, refer to or provide for any modification or rescission of the previous contract, and there is not a circumstance attending

the transaction from which an intention that it should, can be inferred. The court below seemed to suppose that the case of *Thorpe* v. *New York Central and Hudson River Railroad Company* (76 N. Y. 402) tended to support the recovery in this case, but we are of the opinion that it has no bearing upon the question involved herein. That case holds that the servants in a drawing-room car in their relations to passengers, and their conduct in preserving order, and enforcing the rules and orders of the company, are the servants of the railroad corporation, but that case is very far from holding that such servants have the right to make contracts on behalf of the company for transportation, or that, if they do, they necessarily rescind other contracts existing between the passenger and the company.

We are, for the reasons stated, of the opinion that the judgments of the courts below should be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.