CHARLES H. DWINELLE, Appellant, *v*. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*129-515.*
*133-266.*
*137-257.*

A railroad corporation, by the sale of a ticket for passage on its road, assumes the obligation and undertakes absolutely to protect the passenger against any injury from negligence or willful misconduct of its servants while performing its contract, and *it seems*, so far as practicable, of his fellow passengers; also to provide him with the usual accommodations and any information or facilities necessary for the full performance of the contract ; their obligation in this respect continues so long as the contract continues.

Whatever may be the motive which incites the servant to commit an unlawful or improper act toward the passenger during the existence of the relation of carrier and passenger, the carrier is liable for the act and its natural and legitimate consequences.

Where a passenger purchases a ticket for a passage on an ordinary car, and a ticket for a berth in a sleeping-car on the same train, the porter of the sleeping-car is, in the performance of the duties and obligations of the railroad company under its contract, the servant of the company, although it does not own the sleeping-car or hire or pay the porter.

In an action to recover damages for an assault upon plaintiff while a passenger on defendant's road, by the porter of a sleeping-car, it appeared that plaintiff purchased tickets for himself and wife for a continuous passage from G. to N. Y. in one of defendant's ordinary cars, and purchased from the porter, there being no other person acting as conductor, tickets for a section in a sleeping-car in the same train, which, upon plaintiff and his wife retiring, were taken up by said porter.  The train was detained by a washout, and after waiting until nearly noon the next day, said porter informed plaintiff he must take another train.  The porter conducted plaintiff and his wife to a sleeping-car in the other

train, and, upon finding it filled, he conducted them into an ordinary car, where there were no vacant seats. On being requested to return the sleeping-car tickets, or procure for plaintiff something to show that he was entitled to a section in a sleeping-car to N. Y. the porter refused to do so, and turned to go away, when plaintiff touched him lightly on the arm, saying to him he must not leave without some satisfaction; whereupon the porter struck plaintiff a violent blow in the face, knocking him down and injuring him. The complaint was dismissed on trial. *Held*, error; that the question whether the porter was engaged in the performance of his duties as defendant's servant at the time of inflicting the blow, should have been submitted to the jury.

*Dwinelle* v. *N. Y. C. & H. R. R. R. Co.* (45 Hun, 139), reversed.

-(Argued February 25, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 12, 1887, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at circuit.

This was an action to recover damages for an assault upon plaintiff by a porter on a sleeping-car in one of defendant's trains.

The facts proven upon the trial were that plaintiff purchased tickets for himself and wife from Geneva to New York for a continuous passage in the ordinary car upon defendant's road, and also tickets for a section in a sleeping-car in the same train from the porter, there being no other person acting as conductor thereof, and paid him for the same. In due run he would have reached the city of New York the next morning, but upon awakening next morning he learned the train was detained at Utica owing to a washout near Amsterdam, and the plaintiff with the other passengers, after waiting till nearly noon, was informed by the porter of the sleeping-car that he was required to take another train to the washout, and there, after passing the washout, to take still another train to be carried to New York city.

The porter took the hand-baggage of plaintiff and his wife and conducted them to the train they were required to take from Utica to the washout.

The porter carrying their luggage or parcels conducted them to the sleeping-car which formed a part of the train plaintiff was required to take, but not finding a vacant seat for plaintiff and his wife in the sleeping-car, conducted them into an ordinary coach forming a part of this train, and said to plaintiff, very likely another sleeper would be put on to the train, and then the plaintiff could have a seat in it. There were no vacant seats in this car, but a gentleman gave his seat to the plaintiff's wife and the plaintiff remained standing. The porter deposited their luggage at the end of the car near the door.

The porter then turned to go away from plaintiff and walked toward the rear end of the car. Plaintiff then stepped after the porter, pulled his sleeve slightly, whereupon the porter turned toward the plaintiff, and the plaintiff said to the porter, "you have my sleeping-car ticket. I have nothing to show on the other side of the washout that I am entitled to sleeping-car accommodations. I wish you to give me something before you leave me — give me back my ticket so that I can have sleeping-car accommodations on the other side of the washout." The porter replied, " I keep that ticket to show to the company." The plaintiff said to the porter, " if you cannot give me that, then take me to the ticket office here and tell them how things are, and ask them to give me some check or ticket which I can show to the conductor on the other side of the washout."

The porter refused to go to the office with the plaintiff as requested, and then the plaintiff requested the porter to make the plaintiff acquainted with the sleeping-car conductor who was going upon the train, and the porter replied that he would show the plaintiff the conductor. The plaintiff and the porter thereupon left the car and walked along by the side of the train, and as they were passing along the porter pointed out a group of men wearing railroad uniforms and said, " there is the conductor." Plaintiff then said to the porter, " he does not know me, take me to him and make me acquainted with him, and tell him I am entitled to a section to New York." The por-

ter turned to go away, saying "that is none of my business." Plaintiff then said, touching the porter lightly on the arm, "you must not leave me without some satisfaction in this business." The porter thereupon said "take your hand off of me or I'll hit you," and struck the plaintiff a violent blow in the face knocking the plaintiff down and rendering him unconscious.

These acts were done and declarations made in the yard of the defendant at Utica, which at the time contained the depot and station, trains, cars, offices and employes of the defendant. and numerous other passengers who had been detained at this point on account of the washout.

The plaintiff also introduced in evidence an agreement between the defendant and the New York Central Sleeping Car Company, the provisions of which, that bear upon the questions in this case, will be referred to in the opinion, and rested.

Tne defendant moved for a dismissal of the complaint, upon the grounds that the plaintiff had made out no cause of action against the defendant; that the cause of action stated in the complaint had not been made out; that the act complained of was not done within the scope of the authority of the person who did the act; that the act complained of was not done by any servant of the defendant, within the scope of his or any authority he had; that the act complained of was not done by any servant of the defendant while engaged in performing any duty which the defendant owed to the plaintiff; that the act complained of was not an act to be foreseen or provided or guarded against by the defendant.

*Hugh L. Cole* for appellant. The relation of carrier and passenger existed between the defendant and the plaintiff at the time the assault was committed. (Patterson on Railway Law, 214; Wood on Railway Law, 1046; Thompson on Carriers, 50; *J. R. R. Co.* v. *Riley*, 39 Ind. 568; *Buffett* v. *T. R. R. Co.*, 40 N. Y. 168; *Clussmann* v. *L. I. R. R. Co.*, 73 id. 606; *K. N. L. P. Co.* v. *Tone*, 88 Ill. 608; *P. C. & H. P. R. Co.* v. *Krause*, 30 Ohio St. 222; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 N. Y. 355.) The plaintiff's assailant was for

all purposes of this action, the servant of the defendant. (*Thorpe* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 402; *Ulrich* v. *N. Y. C. & H. R. R. R. Co.*, 108 id. 80; *Railroad Co.* v. *Walrath*, 38 Ohio St. 461; *Kingsley* v. *L. S. R. R. Co.*, 125 Mass. 54; *P. Co.* v. *Roy*, 102 U. S. 457.) The assault having been committed during the course of the contract of carriage by one who had been entrusted with some participation in the execution thereof, the defendant is liable. (*Stewart* v. *B. & C. T. R. R. Co.*, 90 N. Y. 588; *R. R. Co.* v. *Vandiver*, 42 Penn St. 365; *Nieto* v. *Clark*, 1 Cliff. 145; *Croker* v. *C. & N. W. R. Co.*, 36 Wis. 657; *T. H. R. R. Co.* v. *Jackson*, 81 Ind. 21; *Peebles* v. *B. R. R. Co.*, 60 Ga. 282; *McKerley* v. *C. & N. W. R. R. Co.*, 44 Ia. 314; *C. R. R. Co.* v. *Flexman*, 103 Ill. 546; *Bryant* v. *Rich*, 106 Mass. 180; *Goodard* v. *G. T. R. Co.*, 57 Me. 213; *Shirley* v. *Billings*, 8 Bush. 147.) Even if in fact at the time of the assault the porter were not engaged in performing any duty imposed upon him by the defendant, if third persons had a right to infer from the circumstances that he was so engaged, the defendant is liable. (1 S. & R. on Neg. § 148; *Tousey* v. *Roberts*, 21 J. & S. 446; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 201; *Walsh* v. *H. F. I. Co.*, 73 id. 5; *Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 id. 286.) The question whether the porter was so engaged, or whether the plaintiff had a right to infer that he was so engaged, at the time he committed the assault should have been submitted to the jury. (*Hart* v. *N. Y. C. & H. R. R. R. Co.*, 80 N. Y. 622; *Jackson* v. *S. A. R. R. Co.*, 47 id. 274.) There was only one contract which concerned the transportation and accommodation of the plaintiff, and that was a contract with the defendant. (*Kinsley* v. *L. S. R. R. Co.*, 125 Mass. 54.) The transactions from the time the plaintiff demanded the return of his ticket upon the train until the catastrophe was one and indivisible, and if the defendant was responsible for the porter's acts when he started to take the plaintiff to the conductor, it was equally responsible when the assault was committed. (*Shirley* v. *Billings*, 8 Bush. 157;

*Peebles* v. *B. & A. R. R. Co.*, 60 Ga. 282.) Even upon the hypothesis that the porter was not a servant of the defendant, and that he was a stranger to the contract, the defendant is liable for the injury complained of. (*Brehm* v. *G. N. R. Co.*, 34 Barb. 271 ; *K. P. R. Co.* v. *Miller*, 2 Col. 442.)

*Frank Loomis* for respondent. The complaint was properly dismissed. (Laws of 1858, chap. 125 ; *Stewart* v. *B., etc., R. R. Co.*, 90 N. Y. 588.)

POTTER, J. The defendant was under contract obligations to transport the plaintiff, with his wife, from Geneva to the city of New York, and it had entered upon the performance of the contract, when further performance was temporarily suspended until the defendant could make arrangements to overcome the difficulty and obstruction caused by the washout of its road-bed.

While this was being done the plaintiff was a passenger of the defendant, and entitled to all the rights which pertain to a passenger upon a train moving toward the point or destination specified in the contract of carriage. Among the obligations which such contract imposes upon the carrier are, " to protect the passenger against any injury from negligence or willful misconduct of its servants while performing the contract, and of his fellow passengers and strangers, so far as practicable, to treat him respectfully, and to provide him with the usual accommodations and any information and facilities necessary for the full performance of the contract upon the part of the carrier. And these obligations continue to rest upon the carrier, its servants and employes while such contract continues and· is in process of performance. (*Thorpe* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 402 ; *Stewart* v. *B. & C. T. R. R. Co.*, 90 id. 588; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 355 ; Thompson on Carriers of Passengers, 50 ; *P. C. & S. L. R. Co.* v. *Krouse*, 30 Ohio St. 224.)

There cannot be any serious question that such are the ordinary duties and obligations between the passenger and the carrier.

The relation of the plaintiff and defendant being that of passenger and carrier, with the duties and obligations to each other resulting from such relation, these questions arise and require consideration in the determination of this case. Was the sleeping-car porter the agent of the defendant? And if so, was he engaged in the performance of his duties as such agent at the time of inflicting the blow upon the plaintiff?

The answer to the first question is, that the porter of a sleeping or drawing-room car, even in cases where there is a contract, like the contract put in evidence by the plaintiff in this case, between the railroad company, which sells a passage ticket in its ordinary coaches to a passenger, and the proprietors of a sleeping-car who sells a ticket to the same passenger for a seat and berth in a sleeping-car running in the same train, is *the servant of the railroad company.* This question has been definitely settled by the highest court in this state and of the United States. (*Thorpe* v. *N. Y. C. & H. R. R. R. Co.,* 76 N. Y. 406; *Penn. Co.* v. *Roy,* 102 U. S. 451.)

The contracts in those two cases are, in all essential respects, like the contract in this case. The railroad company, in those cases, as in this case, did not own the drawing-room or sleeping-car. Nor did it hire or pay the porter. The contract required that the servants employed by the sleeping-car company should be acceptable to the railroad company with other stipulations of a correlative character not necessary to be specified.

In those cases it was held that the law will not permit a railroad company, engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping-car company whose cars are used by the railroad and constitute a part of its train, to evade the duty that is imposed upon it by law, and that the defense that the porter was not the servant of the railroad company, but of the sleeping or drawing-room car company is not a defense to the railroad company, or rather in the language of Judge ANDREWS, "that the persons in charge of the drawing-room car are to be regarded and treated in respect to their dealings with passengers as the servants of the defendant (the railroad company), and that the

·defendant is responsible for their acts to the same extent as if they were directly employed by the company."

And this court, in the same case (*Thorpe* v. *N. Y. C. & H. R. R. R. Co.*, *supra*), holds that the act of 1858, chapter 125, introduced by the plaintiff in the case under consideration, authorizing railroad and sleeping and drawing-room car companies to make contracts of that character, carefully provided that it should not be construed to exonorate the railroad company from the payment of damages for injuries in the same way and to the same extent as if the cars were owned and provided by the railroad company.

These cases hold as matter of law that the porter of the sleeping-car is, in the performance of the duties and obligations of the railroad company under its contract to carry a passenger, the servant of the railroad.

The second of the above questions is, was the sleeping-car porter engaged in the performance of his duties as such agent at the time of inflicting the blow upon the plaintiff? That question must, in this and similar cases, depend upon the evidence and must be determined by the jury. The office of the court is to determine what facts are proper to be submitted to the jury for its determination of that question.

We think the evidence in this case should have been submitted to the jury. The evidence was to this effect: That the defendant had contracted to carry plaintiff to New York; that contract had not been performed, but was in process of performance; that the porter was actually engaged in the performance of services to that end; that, owing to the interruption of the train upon which the defendant was carrying the plaintiff to his destination, it became necessary to transfer the plaintiff to another train; that the porter so informed plaintiff, and was transferring the plaintiff to the other train, with his luggage; that the porter was the person of whom the plaintiff purchased and paid for his seat and berth and to whom the plaintiff had surrendered it upon demand, and was, in short, the only person with whom the plaintiff had any business relations upon the train, and was the only person who represented

the defendant, or whom the defendant had in any manner put forward or presented in the sleeping-car to perform the duty and service which the defendant owed the plaintiff. Upon these and other facts developed upon the trial, the question should have been submitted to the jury whether or not the porter was not at this time and down to the act of striking the plaintiff, the servant of the defendant. (*Buffett* v. *T. & B. R. R.* Co., 40 N. Y. 168; *Tousey* v. *Roberts*, 21 J. & S. 446, 447; *Althrof* v. *Wolfe*, 22 N. Y. 355; *Isaacson* v. *N. Y. C. R. R.* Co., 94 id. 278.)

But it is urged that if the porter was as matter of law, or if the jury had found upon such submission as matter of fact that the porter was the servant of the defendant at the time and place of striking the plaintiff, the striking was willful and malicious upon the part of the porter and beyond the scope of his employment; and, further, that the porter had finished the service he was performing for defendant toward the plaintiff and that the defendant owed the plaintiff no further duty.

I need not stop to discuss the contention that the master is. not liable for the willful and malicious acts of a servant of a carrier toward or upon a passenger. The case of *Stewart* v. *B. and C. T. R. R.* Co. (90 N. Y. 588) settles that question against the defendant in this case. In that, Judge Tracey says: "By the defendant's contract with the plaintiff it had undertaken to carry him safely and to treat him respectfully, and, while a common carrier does not undertake to insure against any injury from every possible danger, he does undertake to protect the passengers against any injury from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger. A common carrier is bound, so far as practicable, to protect his passengers, while being conveyed, from violence committed by strangers and co-passengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract," or as otherwise therein expressed, "from an assault committed upon a passenger by a servant entrusted with the

execution of a contract of a common carrier." (*Weed* v. *P. R. R. Co.*, 17 N. Y. 362.)

These and numerous other cases hold that no matter what the motive is which incites the servant of the carrier to commit an unlawful or improper act toward the passenger during the existence of the relation of carrier and passenger, the carrier is liable for the act and its natural and legitimate consequences. (*Neito* v. *Clark*, 1 Cliff. 145; *Commonwealth* v. *Power*, 7 Metc. 596; *Goddard* v. *G. T. R.*, 57 Me. 202; 2 Am. Rep. 39; *Craker* v. *C. & N. W. R. Co.*, 36 Wis. 657; 17 Am. Rep. 504; *C. & E. R. R. Co.* v. *Flexman*, 103 Ill. 546.)

It is also urged in behalf of defendant in this case that the porter had performed all the duties which, as the servant of the defendant, he owed to the plaintiff. I think this view of the situation and obligations of the parties in this case entirely too narrow and is untenable.

The contract of carriage between the plaintiff and defendant was but partially performed and was in the actual process of performance. The plaintiff had been waiting through the forenoon to enable the defendant to make the necessary arrangements to complete his contract of carriage. The arrangement made by the defendant for that purpose was to start an independent train from Utica. This required the transfer of the plaintiff and his luggage to such other train. It was necessary that the plaintiff should be informed of this and that he, with his luggage, should be transferred to such other train. The porter was attending to this duty and to that end had placed the plaintiff in an ordinary car to resume his journey. If the plaintiff had been injured by any negligence or misconduct of the defendant's servant, or from a defect in the defendant's railroad grounds or walks or yard, while waiting the making up and taking the extra train, there could be no question as to the liability of the defendant therefor. (*Clussman* v. *L. I. R. R. Co.*, 9 Hun, 618; 73 N. Y. 606; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 355.)

The passenger is entitled to all necessary information to enable him to pursue his journey with safety and dispatch,

and he has often been held guilty of contributory negligence, relieving the carrier from liability for his omission to make such inquiries. (*Siner* v. *G. W. R. Co.*, L. R. [3 Exch.] 150, cited in note to the opinion *Hulbert* v. *N. Y. C. R. R. Co.*, 40 N. Y. 153.)

If it is the duty of the passenger to make inquiry, it is the corresponding duty of the carrier to give the information sought.    The porter had undertaken to furnish such information to the plaintiff, or to introduce him to the conductor of the sleeping-car for that purpose, and while so engaged had refused to complete the work, and struck plaintiff the blow complained of.

As we have seen, the defendant owed the plaintiff the duty to transport him to New York, and, during its performance, to care for his comfort and safety.    This duty of protecting the personal safety of the passenger and promoting, by every reasonable means, the accomplishment of his journey is continuous, and embraces other attentions and services than the occasional service required in giving the passenger a seat or some temporary accommodation.    Hence, whatever is done by the carrier or its servants which interferes with or injures the health or strength or person of the traveler, or prevents the accomplishment of his journey in the most reasonable and speedy manner, is a violation of the carrier's contract and he must be held responsible for it.

The idea that the servant of a carrier of persons may, in the intervals between rendering personal services to the passenger for his accommodation, assault the person of the passenger, destroy his consciousness and disable him from further pursuit of his journey, is not consistent with the duty that the carrier owes to the passenger, and is little less than monstrous.    While this general duty rested upon the defendant to protect the person of the passenger during the entire performance of the contract, it signifies but little or nothing whether the servant had or had not completed the temporary or particular service he was performing or had completed the performance of it, when the blow was struck.    That blow was given by a

servant of the defendant while the defendant was performing its contract to carry safely and to protect the person of the plaintiff, and was a violation of such contract.

·Hence, we think the court should not have dismissed the complaint, but should have submitted these facts and the circumstances attending the blow to the jury, upon the question whether or not the porter was in the performance of his duties, as the defendant's agent, when the blow was inflicted.

The judgment should be reversed and a new trial granted with costs to abide the event.

All concur.

Judgment reversed.