OPINION OF THE COURT
William D. Friedmann, J.
This small claims action was tried in a regular part of the court following waiver by defendant of a demand for trial by jury (CCA, § 1806). Plaintiff sued for “failure to provide services” relying on defective or inoperative air-conditioning service in defendant’s train cars.
The substance of plaintiff’s claim, presented through his testimony, exhibits and memoranda was that on nine separate occasions, during the hot summer of 1980, he was a passenger aboard defendant’s New York (Penn Station) to Baldwin and Baldwin to New York trains, running on the Babylon branch line, that the air-conditioning systems aboard these window-sealed M-l trains were not working properly or not functioning at all, that the temperature in the train cars in which plaintiff was riding was unbearable *815 and was in the 90 degree to excess of 100 degree range, and that defendant was under a duty to furnish him services in the form of properly functioning air conditioning in its train cars.
In its defense, defendant presented two witnesses, documentary evidence and memoranda, contending that its refund policy did not provide for refunds in the event of lack of air conditioning. Defendant’s assistant chief mechanical officer for operations Edward F. Case specifically testified in detail concerning defendant’s air-conditioning maintenance program including the cleaning and repair procedures for the entire fleet of defendant’s M-l cars which cars were in use on the Babylon branch line trains during the July through September period of 1980. In summary, defendant contended that it was not obligated to provide the air-conditioning services for which plaintiff has sued, or that the air-conditioning breakdowns of 1980 were due to its negligence, or to any willful, wanton or reckless conduct on its p^rt.
SMALL CLAIMS STANDARDS
Small claims is meant to be a people’s or layman’s court where claims may be tried speedily, informally, and inexpensively. Section 1804 of the New York City Civil Court Act (CCA) mandates that small claims hearings be conducted in a manner as to do substantial justice between the parties, according to rules of substantive law and that the rules of practice, procedure, pleading and evidence be greatly relaxed.
In commenting upon “substantial justice” in the context of a small claims forum, the Third Department, in considering a statutory provision of the Uniform City Court Act similar to section 1804 of the CCA noted that “[t]o effectuate the purposes of the law, the trial court must be given wide latitude and discretion in the conduct of the proceedings.” (Buonomo v Stalker, 40 AD2d 733.) The “substantial justice mandate” in the New York Small Claims Court is examined in depth in the Albany Law Review (vol 39, p 196) and also in an article on small claims practice in the United States in the St. John’s Law Review *816 (vol 52, p 42). The fact that this small claim was removed and heard in a regular part of the court, upon the defendant’s jury demand, under section 1806 of the CCA, which demand was subsequently waived, does not transform the small claim into an ordinary case, with respect to the relaxed or adjusted procedure and evidence. (MaeCollam v Arlington, 94 Misc 2d 692.) Therefore, these small claims principles must be applied in the instant case to the relevant rules of substantive law in determining liability, if any, and resulting damage.
LIABILITY
There appears to be no direct authority concerning liability for defective and inoperative air conditioning. (But see Kessel v Long Is. R. R., 107 Misc 2d 1067, Goldstein, J., considering inoperative air conditioning; 33 ALR2d 1358, concerning failure to heat trains and buses.)
. However, the Court of Appeals has over the years held that a railroad company owes its passengers the duty: “to care for his comfort and safety. This duty of protecting the personal safety of the passenger and promoting, by every reasonable means, the accomplishment of his journey is continuous, and embraces other attentions and services than the occasional service required in giving the passenger a seat or some temporary accommodation.” (Dwinelle v New York Cent. & Hudson Riv. R. R. Co., 120 NY 117, 127.) And, in Palmer v Delaware & Hudson Canal Co. (120 NY 170), the Court of Appeals noted that while a railroad company is not an insurer of the safety of its passengers, it is bound to use a high degree of skill and vigilance to guard against accidents. This vigilance, the court said, is to be exercised by the railroad in seeing that its road and appliances used in operating it are and remain in good condition and free from defects; a latent defect which will relieve it from liability is such, only as no reasonable degree of human skill and foresight could guard against.
In the circumstances of this case, the defendant provided air-conditioning systems and service in its fleet of M-l cars. These cars had sealed windows excluding the option of open *817 ing windows in order to induce the circulation of air or adequate backup ventilation in the event of air-conditioning failure. Defendant’s assistant chief mechanical officer, Edward F. Case, crystallized the situation faced by plaintiff and defendant’s other train passengers during the hot summer of 1980 when he testified upon cross-examination as follows:
“Q. I’m not questioning the efforts made. My question to you is do you stipulate that the air conditioning did not work during the months and dates in question?
“A. We were well aware of the fact that we were running cars with inoperative air conditioning or ineffective air conditioning during that period of time. * * *
“Q. How high does the temperature get in one of those cars if it is approximately 100° outside.
“A. I would say the temperature would rise to 125° in a car.”
The trial record indicates that before the summer of 1980 defendant found that the method prescribed by the manufacturer of the air-conditioning systems in its M-l cars to clean the condenser coils was not effective or satisfactory; that prior to and during the summer of 1980, defendant was experimenting with various methods of cleaning the condenser coils which were the root of its air-conditioning problems.
I find that there is ample evidence on the record, to conclude, that from defendant’s air-conditioning maintenance, cleaning and repair efforts, that it did not willfully, wantonly or recklessly fail to provide air-conditioning services. (Restatement, Torts 2d, § 500 et seq.)
However, I do conclude that the record supports a finding that the defendant undertook to provide air-canditioning service, and did so negligently; that its maintenance and repair efforts were inadequate, concededly ineffective and constituted experimentation, during a period when it knew or should have known that the comfort, health and safety of plaintiff and its other passengers would be placed in jeopardy.
*818 By providing its passengers including plaintiff with its M-l cars with their sealed windows, and nonexistent or inadequate means of alternative ventilation, the defendant placed plaintiff in a more vulnerable position than he would have been in, had defendant’s train cars retained the option of windows that could be opened thus making air-conditioning service less essential. In short, I find that defendant is liable in negligence under an “assumed duty” theory. One who undertakes to render services to another such as defendant here, which it should have recognized as necessary for the other’s protection is subject to liability for its failure to exercise reasonable care, in performing its undertaking, if such failure increases the other’s risk of harm and there is reliance upon the undertaking, such as suggested by the relationship of dependency herein. (Restatement, Torts 2d, §§ 314A, 323.)
I find that defendant was under a duty to take reasonable care as to provide for the plaintiff’s comfort and safety, and protect him against risk, as it was reasonably foreseeable that plaintiff and defendant’s other passengers, would reasonably rely to their peril upon the existence of adequate and effective air-conditioning service in defendants’ airtight M-l cars.
DAMAGES
It was plaintiff’s position at the trial that he was entitled to damages in the amount of $134.30. Specifically: (1) refund of fares, nine trips at $3.15 or $28.35, and one half fare at $1.55 for a total of $29.90; (2) loss of earnings for a day (August 6, 1980) because of heat exhaustion following his train ride on August 5,1980 in the amount of $100, and (3) small claims filing fee of $4.40.
I find that there is ample evidence on the record to support plaintiff’s contention that he was a passenger aboard defendant’s trains on the dates in issue, and under the circumstances was harmed and is entitled to a refund of $29.90. Item (2) is disallowed as no proof other than plaintiff’s testimony was offered in support of his claim for lost earnings and heat exhaustion. Although standards of procedure, practice and evidence and the application of sub *819 stantive law are greatly relaxed in small claims as previously discussed, they are not completely eliminated (see Tobia v Loiacono, 93 Misc 2d 689) . Plaintiff with reasonable diligence might have established his loss of earnings and heat exhaustion on the date in question, namely, August 6,1980. Item (3) is disallowed. The small claims filing fee of $4.40 is not a proper ingredient of consequential damage. This fee is an element of taxable costs, upon entry of judgment.
Accordingly, the court in the interests of achieving “substantial justice” directs that judgment in the sum of $29.90 plus interest be entered in favor of the plaintiff, against the defendant, together with taxable costs and disbursements of this proceeding. (CCA, §§ 1901-1903, specifically § 1903, subd [i].)