HENI SORKIN et al., Appellants, v S. LEE, Respondent.

Fourth Department, December 23, 1980

**APPEARANCES OF COUNSEL**

*Shapiro & Rosenbaum (Sanford R. Shapiro* of counsel), for appellants.

*Robert J. Hirsch, P. C. (Laura J. Poyzer* of counsel), for respondent.

**OPINION OF THE COURT**

SIMONS, J.

[1] In 1978 plaintiffs decided, as many married couples do, to limit their family. Of the several modern methods of contraception available, they chose sterilization of the hus-

band by vasectomy. They allege in their complaint that the doctor who performed that vasectomy did so carelessly and that as a result Mrs. Sorkin gave birth to an unplanned child. We have previously held, as have other courts, that they have a cause of action for the birth of the child if the physician's negligence caused it (see *Ziemba v Sternberg*, 45 AD2d 230; and see *Deborah S. v Sapega*, 56 AD2d 841; *Chapman v Schultz*, 47 AD2d 806). The issue which divides this court is what elements of damage plaintiffs may properly recover.

The complaint alleges six causes of action. In the first and fourth causes of action each parent seeks to recover the cost of caring for, and educating the child born after the abortive vasectomy, "for a period of not less than twenty-one years". In the second and third causes of action the husband seeks to recover the expenses of his wife's care and treatment during pregnancy and delivery and for the loss of her services and companionship. In the fifth cause of action the wife seeks to recover her loss of potential future earnings because she has acquired the responsibility of caring for the child. In the sixth cause of action the wife seeks damages for pain and suffering.

■■ We affirm Special Term's order dismissing plaintiffs' first, fourth and fifth causes of action. Damages may not be recovered for the normal expenses of rearing and educating a healthy but unwanted child. Such damages are not only speculative beyond realistic measurement (see *Sala v Tomlinson*, 73 AD2d 724) but in this case they were avoidable because plaintiffs do not claim that defendant's conduct prevented them from discovering the pregnancy or terminating it or that abortion was contraindicated because of any medical condition of the mother (see Prosser, Torts [4th ed], § 65, pp 422-424; see, also, *Krauth v Richmond Mem. Hosp.*, 13 NY2d 949; cf. *DuBois v Decker*, 130 NY 325; *Carpenter v Blake*, 75 NY 12).

The dissenter contends that the mother's failure to abort is a matter of defense to be submitted to the jury for consideration on the question of damages. We agree that causation and mitigation are usually fact issues. But if the jury is to consider in all cases whether the mother could have and should have terminated her pregnancy, it possesses discre-

tion over the amount of damages that for all practical purposes is unrestrained and unreviewable and it may subject the parties to a decision on damages determined by hindsight and heavily influenced by the individual ethical and religious bias of the jurors.

We do not suggest that the mother was obliged to terminate the pregnancy; nor do we intend to minimize the difficult personal choices confronting a married couple faced with an unplanned pregnancy. Indeed, it is just because such situations require difficult decisions which must be resolved by weighing a variety of personal medical and social considerations, that a defendant's exposure to damages should not depend upon them. On the facts of this case, however, abortion was a legitimate medical option. Plaintiffs were free to elect it or not, but their decision should not affect defendant's potential liability.

In urging reversal, the dissenter relies primarily upon the Court of Appeals decisions in *Becker v Schwartz* and its companion case, *Park v Chessin* (46 NY2d 401). In *Becker*, plaintiff wife became pregnant during her late child-bearing years and subsequently gave birth to a child suffering from Down's Syndrome (mongolism). Plaintiffs claimed that the wife's physicians negligently failed to test or warn her of the possibility that her child would be deformed at a time when she could have and would have aborted the pregnancy. In *Park*, plaintiffs alleged that the wife had already given birth to one child suffering from a genetic kidney disease. Before contemplating another pregnancy, they consulted physicians about the possible danger that a second child would suffer similarly. The physicians advised them that the disease was not hereditary and that the chances of recurrence in a future pregnancy were "practically nil". Thereafter, the Parks conceived a child but it was born with the same progressive kidney disease as their first child and lived for only two and one-half years. On motion addressed to the pleadings, the Court of Appeals held that the infants did not have causes of action for "wrongful life" but that the parents' stated claims by which they could recover the sums of money required for the long-term institutional care of the Becker infant and the extraordinary expenses required for the care and treatment of the sick Park infant before her

death *(Becker v Schwartz, supra,* pp 413, 415).* The court did not pass upon the question whether the parents could recover the normal and routine expenses of raising unwanted, deformed or sick children and, obviously, it did not rule that parents could recover damages for the routine expenses of rearing a normal, healthy child.

Nor have our past decisions established such a rule, expressly or by implication. The dissenter contends that we did so in *Ziemba v Sternberg* (45 AD2d 230, *supra)* but there, in deciding that plaintiff mother stated a cause of action when she alleged that the doctor wrongfully and negligently failed to diagnose her unwanted pregnancy in time for an abortion, we expressly deferred ruling on the damages recoverable, stating that "matters * * * dealing with the question of damages [were] * * * not pertinent to the * * * sufficiency of the complaint" and should await trial *(Ziemba v Sternberg, supra,* p 233). Our later decision in *Chapman v Shultz* (47 AD2d 806, *supra)* holds no more.

Moreover, *Becker (supra)* and *Ziemba (supra)* are factually distinguishable from the present case. In *Becker* and *Park (supra)* the parents desired the children and continued the pregnancy with the doctors' assurance that the children would be healthy. In *Ziemba* the doctor negligently failed to discover the unwanted pregnancy until it was too late to abort the fetus. Here, from all that appears in the record, the mother was aware of the unwanted pregnancy from its inception and did not choose to terminate it.

There are serious policy considerations which militate against the recovery sought here. Manifestly, exposure to such damages may result in substantial verdicts against which potential defendants cannot readily insure themselves. That danger will suggest to many physicians that they should practice "defensive medicine". But decisions to

---

* Judge WACHTLER, dissenting, pointed out that such damages were traditionally derivative and since the court had held that neither infant had a cause of action for "wrongful life", the parents should not recover *(Becker v Schwartz, supra,* pp 419-420). *A fortiori,* if infants have no cause of action for being born deformed *(Becker v Schwartz, supra),* sick *(Park v Chessin,* 46 NY2d 401, *supra),* or stigmatized because conceived during rape or incest *(Williams v State of New York,* 18 NY2d 481), most assuredly a child born normal and healthy, as in this case, cannot plead a justiciable cause of action for "wrongful life".

sterilize or abort should be based solely upon the psychic and physical well-being of the patient and his or her family, and neither the family's decision nor the physician's advice should be influenced by considerations of legal liability.

Mrs. Sorkin's pregnancy placed plaintiffs in a position little different from that of many married and unmarried couples, even in this day of sophisticated contraception and family planning; they were faced with the birth of an unanticipated child. If that pregnancy was the result of medical malpractice, established law permits Mr. Sorkin to recover damages for the medical expenses for the care and treatment of his wife during pregnancy and delivery of the baby and for the loss of her services and consortium and it permits Mrs. Sorkin to recover for the physical injury and pain occasioned by her unanticipated pregnancy (see, generally, Ann. 83 ALR3d 15; Ann. 27 ALR3d 906). But to hold the physician responsible for the cost of future care of a healthy normal child based upon the parent's private decision on how to accept the unplanned pregnancy is to inflict a penalty on defendant that is out of all proportion to his wrong. It is one thing to tote up the medical bills and assess damages against a negligent physician for extraordinary unanticipated expenses resulting from the preventable birth of a defective baby, as in *Becker* (46 NY2d 401, *supra*). It is quite another to assess him for the myriad costs of raising a normal healthy child for some indefinite period in the future and "not less than 21 years".

The order should be affirmed.

HANCOCK, JR., J. (dissenting). I must dissent. The majority agree (citing our decision in *Ziemba v Sternberg*, 45 AD2d 230) and, indeed, defendant concedes that plaintiffs have stated a valid cause of action in malpractice based upon the allegations of the unsuccessful sterilization operation, defendants' representation that the procedure had been successfully performed, and plaintiffs' reliance thereon in resuming marital relations without the use of contraceptives. The established rule which we restated in *Ziemba v Sternberg (supra*, p 231) is that the "malpractice action being one for personal injuries *(Robins v. Finestone*, 308 N. Y. 543, 546), 'the person responsible for the injury must respond for all damages resulting directly from and as a

natural consequence of the wrongful act according to common experience and in the usual course of events, whether the damages could or could not have been foreseen by him.' *(Steitz v. Gifford,* 280 N. Y. 15, 20.)" In reviewing this motion to dismiss, there can be no question, taking the allegations of the complaint to be true, that as a direct consequence of the doctor's breach of his duty owed to them, plaintiffs are faced with the very expenses and burdens that they, for whatever reasons, sought to avoid through the vasectomy operation—those incident to the care of the child. Thus, in depriving plaintiffs of the right to make proof of damages which unquestionably flow from the physician's alleged malpractice, the majority depart from the accepted rule of damages in malpractice actions.[1]

As the rationale for their holding that as a matter of law plaintiffs' damages in this case should be restricted to those damages resulting only from the pregnancy and delivery (thus ruling out other damages notwithstanding that they result "directly from and as a natural consequence of the wrongful act" [*Ziemba v Sternberg, supra,* p 231]), the majority advance two postulates: (1) that such damages are "speculative beyond realistic measurement" (citing *Sala v Tomlinson,* 73 AD2d 724); and (2) that in this case the damages "were avoidable because plaintiffs do not claim that defendant's conduct prevented them from discovering the pregnancy or terminating it or that abortion was contra-indicated because of any medical condition of the mother." Each will be examined.

That the damages here are too speculative to measure runs counter to the decision in *Becker v Schwartz* (46 NY2d 401) where the court sanctioned plaintiffs' claims for the costs of future special care and treatment of the abnormal Becker child. Noting that plaintiffs had pleaded causes of

---

1. Special Term dismissed the first, fourth and fifth causes of action on motion pursuant to CPLR 3211 (subd [a], par [7]) upon the ground that the damages pleaded therein were not recoverable. Although such procedure is inconsistent with the general rule that questions pertaining to damages should properly await consideration and resolution on the trial (see *Becker v Schwartz,* 46 NY2d 401; *Ziemba v Sternberg,* 45 AD2d 230, 233), this issue does not appear to have been raised before Special Term, apparently because both parties desired an answer to the legal questions presented. Accordingly, I do not consider the point as a basis for dissent.

action "founded essentially upon a theory of negligence or medical malpractice", the court held that they "do allege ascertainable damages: the pecuniary expense which * * * [the parents] in Becker must continue to bear, for the care and treatment of their infant * * * *Calculation of damages necessary to make plaintiffs whole in relation to these expenditures requires nothing extraordinary" (Becker v Schwartz, supra,* pp 412-413; emphasis added). Computation of the damages approved in *Becker* could require consideration of unknown and virtually unlimited expenses for long-term institutionalization, nursing care, therapy, treatment, and special equipment. If compensation for such damages "may be readily fixed" *(Becker v Schwartz, supra,* p 413), can it be said that the ordinary expenses of raising a normal child may not be? Indeed, the ordinary costs for food, clothing, routine medical and dental care, etc., for a child are matters well-known to the average citizen through firsthand experience and it would be difficult to think of a group better qualified to assess fairly a claim of damages based on these expenses than a jury of such citizens. Certainly such expenses do not present the uncertain elements of the damages allowed in *Becker* and in other types of claims for prospective damages (e.g., for future pain and suffering, or for impairment of future earning capacity).

As the second basis for their holding, the majority propose that damages for the future care of the child "were avoidable" because plaintiffs do not claim that due to "some medical condition of Mrs. Sorkin" an abortion was "contraindicated". (Had Mrs. Sorkin's complaint contained such allegation, one must surmise, this objection to the damages would have been obviated.) It is certainly arguable that on the trial of the action defendant could raise questions pertaining to the plaintiffs' explanations for deciding against an abortion (see *Martineau v Nelson,* 311 Minn 92, 103-104, n 15, noting that the mother's decision not to undergo an abortion is relevant to the issue of damages but not to liability). It is quite another matter to impose on plaintiffs the obligation of pleading and proving that an abortion was medically ill-advised. To do so offends the accepted rule that factors in mitigation are matters to be pleaded and established in defense of the action (13 NY Jur, Damages, § 26,

p 455). Moreover, and of greater significance, the majority position presupposes the existence of a legal requirement that a woman, who has conceived because of a doctor's malpractice, must, if she can withstand an abortion medically, choose between bearing the child, though that choice may for financial reasons, family size, or other factors, amount to grave hardship for the family, and having an abortion, even though that course may be abhorrent to her for moral, philosophical, or religious reasons. I am aware of no basis in the law or in our cultural, moral, or sociological heritage lending support to such requirement. The religious, ethical, and constitutional implications of such a rule are far-reaching, to say the least. Although the majority disclaim any suggestion that they hold abortion to be "obligatory", the inescapable implication of the proposition is that a woman who refuses to undergo an abortion for medical reasons may recover while one who refuses for other reasons may not. While, to be sure, our decision in *Ziemba v Sternberg* (45 AD2d 230, *supra)* involved a wrongful diagnosis and not a wrongful conception, I fail to see in this distinction any warrant for limiting Justice DEL VECCHIO'S maxim: "The right to have an abortion may not be automatically converted to an obligation to have one" *(Ziemba v Sternberg, supra,* p 233) by adding the proviso: "unless it is medically safe for the mother to do so."

The majority suggest that approving these claims for damages will result in excessive financial exposure of physicians.[2] On the contrary, as noted, the ordinary costs of raising a normal child are likely to be less than the special costs of raising an abnormal child allowed in *Becker* (46 NY2d 401, *supra).* Moreover, recovery may be reduced by the jury's consideration of mitigating factors hereinafter discussed.

The policy argument that there should be no recovery as a matter of law because the addition of a healthy child to a family is a benefit rather than a cause of harm was voiced by defendants in their briefs in *Ziemba v Sternberg*

---

2. The court in *Becker* rejected the position (taken both by Judge WACHTLER in his dissent in *Becker v Schwartz, supra,* p 422, and by the majority here) that the possible magnitude of the physicians' liability and the resultant likelihood that physicians will be inclined to practice "defensive medicine" should preclude liability.

(45 AD2d 230, *supra*) and *Chapman v Schultz* (47 AD2d 806) and by the dissent in *Ziemba (supra,* pp 234-235) and repudiated by a majority of this court in both cases. I recognize, of course, that it could well offend the sensibilities of any fair-minded person to burden a physician with much if any, of the expense of caring for a robust youngster born to parents whose age, health, financial situation, and other familial responsibilities would allow accommodation of the infant without undue hardship. These are the very factors which the jury would weigh in assessing damages and which, in some cases, in view of the offsetting benefits to the parents of having a healthy son or daughter, would in all likelihood persuade the jurors to return modest awards or none at all (see, generally, *Stills v Gratton*, 55 Cal App 3d 698; *Anonymous v Hospital*, 33 Conn S 126; *Troppi v Scarf*, 31 Mich App 240). On the other hand, I can conceive of situations in which, due to factors such as the advanced age or emotional instability of one or both of the parents or the large size or precarious financial condition of the family, the presence of another offspring would cause extreme hardship and impinge adversely upon other family members. Indeed, I can envision the extreme case in which the birth of another child could have disastrous emotional and financial consequences.

I agree with my colleagues that a case such as this could involve questions pertaining to abortion or, for that matter, adoption, and that such measures would necessarily require difficult personal choices for the married couple faced with an unplanned pregnancy. I do not agree, as the majority suggest, that the complexities of these decisions are a basis for absolving the physician from the direct consequences of his breach of duty. Indeed, it may have been precisely because they wished to avoid what to them would be the agonizing quandaries posed by these alternatives to parenthood that plaintiffs here and countless other couples have resorted to sterilization.

In view of the foregoing, and what I find to be the decided weight of authority in other jurisdictions[3] contrary to

---

3. Cases sustaining claims for the costs of rearing and educating the child: *Stills v Gratton* (55 Cal App 3d 698 [unsuccessful abortion; follows *Custodio*

the majority view here, I would reverse and reinstate the first, fourth and fifth causes of action.

CARDAMONE, J. P., CALLAHAN and MOULE, JJ., concur with SIMONS, J.; HANCOCK, JR., J. dissents and votes to reverse and deny the motion in an opinion.

Order affirmed, without costs.

---

v Bauer, 251 Cal App 2d 303]); Custodio v Bauer (supra [unsuccessful sterilization; court applied traditional negligence principles and noted that sterilization is not against public policy]); Anonymous v Hospital (33 Conn S 126 [unsuccessful tubal ligation; court stated that the benefits of parenthood could be argued in mitigation of damages]); Green v Sudakin (81 Mich App 545 [failed tubal ligation; neither difficulty of ascertaining damages nor public policy militate against recovery]); Troppi v Scarf (31 Mich App 240 [negligent filling of prescription for oral contraceptives; contraception is not against public policy; jury may weigh benefits of parenthood in mitigation of damages]); Sherlock v Stillwater Clinic (— Minn —, 260 NW2d 169 [inadequate postvasectomy information and testing; difficulty in ascertaining damages will not bar recovery]); Betancourt v Gaylor (136 NJ Super 69 [unsuccessful tubal ligation; court sustained causes of action for costs, emotional upset, and physical inconvenience of rearing child]); Bowman v Davis (48 Ohio St 2d 41 [failed sterilization; rejected policy argument and applied traditional negligence principles]); Pierce v Piver (45 NC App 111 [failed tubal ligation; court applied traditional negligence principles]); Ball v Mudge (64 Wn 2d 247 [unsuccessful vasectomy; verdict for defendants but court stated case properly submitted to jury]).

Cases approving cause of action but where recovery was limited to damages arising from sterilization operation itself and/or pregnancy and delivery: Bishop v Byrne (265 F Supp 460 [W Va] [unsuccessful sterilization; plaintiffs only requested costs of birth and pain and suffering of pregnancy; court applied traditional negligence principles; but court stated case properly submitted to jury]); Wilczynski v Goodman (73 Ill App 3d 51 [unsuccessful abortion; court stated public policy values life and allows recovery only for pregnancy-related costs]); Bushman v Burns Clinic Med. Center (83 Mich App 453 [failed vasectomy; plaintiffs did not ask for costs of raising child]).

Cases sustaining cause of action but not reaching question of damages: Martineau v Nelson (311 Minn 92 [failed tubal ligation; court applied traditional negligence principles]); Vaughn v Shelton (514 SW2d 870 [Tenn]); Hackworth v Hart (474 SW2d 377 [Ky]); Jackson v Anderson (230 So 2d 503 [Fla]).

Cases disapproving cause of action where costs of rearing child are sole damages in issue: Coleman v Garrison (349 A2d 8 [Del] [unsuccessful sterilization; measuring cost of life against its worth is too conjectural and against public policy]); LaPoint v Shirley (409 F Supp 118 [Tex] [unsuccessful tubal ligation; follows Terrell v Garcia, 496 SW2d 124 [Tex], cert den 415 US 927]); Terrell v Garcia (supra [unsuccessful tubal ligation; cost of raising child is outweighed by benefits]); Rieck v Medical Protective Co. (64 Wis 2d 514 [failure to diagnose pregnancy; burden on physician would be out of proportion to wrong and would create "surrogate parent"]). (See Ann., 83 ALR3d 15.)