OPINION OF THE COURT
David B. Saxe, J.
INTRODUCTION
This Small Claims Court case involves the following novel issue: If a man tells a woman, prior to having sexual intercourse with her, that he is sterile but in fact is.not, may she successfully sue him after becoming pregnant by him, to recover the costs of an abortion incurred by her and other related expenses?
FACTS
The essential facts are these: The claimant, a 35-year-old divorced woman resides with her 10-year-old son. The defendant is 58 years old, a postal worker, married, and has three grown children. The parties met in 1979. The relationship, initially one of friendship and casual dating, grew progessively more intimate and they became lovers sometime in the autumn of 1981.
Prior to having sexual intercourse, the parties discussed the use of contraception since, it is presumed, neither party desired that the claimant become pregnant. The claimant, who had originally planned to use a diaphragm or the rhythm method, was told “not to worry” by the defendant, since he said that he was sterile as a result of a medical *941 condition. He explained to the court that his sterility was caused by a medical condition known as hydrocele. A hydrocele is a collection of fluid which usually forms a mass around the testes. (Sherins and Howards, Male Infertility, in 1 Harrison et al., Campbell’s Urology [4th ed], pp 749-751.) It appears that the defendant’s statement regarding his sterility took place shortly before the parties performed their first assignation. Given their presumed passions, there was perhaps insufficient time for the claimant either to consult a medical expert in the field of infertility or a leading textbook on urology, to ascertain the veracity of his statements although this court eschews the imposition of such a duty. In short, she believed him and in reliance on his statement, she did not use any contraceptive method when having sexual intercourse with him. Her pregnant condition was confirmed in December. She had an abortion on January 23, 1982.
The defendant testified that since he is sterile, the claimant’s pregnancy must have resulted from sexual intercourse with some other man. The claimant vigorously denied this accusation stating that she had not had sexual relations with any man, other than the defendant, during the time period when conception occurred. I find the claimant’s testimony to be credible; the defendant’s uncorroborated accusations of infidelity are not entitled to much weight. (See Family Ct Act, § 531; Matter of Jane L. v Rodney B., lll Misc 2d 761.) Moreover, the defendant’s testimony and responses to the court’s questions were in general, evasive.
As is often the case in a Small Claims Court proceeding, the trier of the facts is required to decide sensitive and difficult issues on a record that contains no expert testimony. Beyond his testimony that he suffered from hydrocele which caused his claimed sterility, the defendant offered no other evidence regarding his alleged condition.
Even if I accept the fact that the defendant has a hydrocele, this condition does not mean that the defendant was sterile. A hydrocele does not generally cause sterility in men. (Sherins and Howards, Male Infertility, op. cit.) Research indicates that hydrocele and afflictions similar to it may, in some cases, be a secondary symptom of other *942 medical conditions which could potentially affect a man’s fertility. (Id.) However, there is nothing in the record to indicate that the defendant was suffering from any other medical disorder which might affect his fertility. His silence on this point permits me to infer that he knew that he suffered from no other disorder for if he did, I would have expected him to testify as to it. (Orange & Rockland Utilities v Amerada Hess Corp., 59 AD2d 110, 119; Richardson, Evidence [Prince, 10th ed], § 222.)
Therefore, I find that the defendant was not sterile, that he engaged in sexual intercourse with the plaintiff, that she had not been intimate with other men during this crucial time period, that hydrocele is not known generally to cause sterility or of itself to affect fertility and, further, that he is the father of three grown children, thus certainly evidencing fertility at some previous points in time. (Cf. EPTL 9-1.3, which abrogates the common-law presumption of fertility and declares that where the validity of a testamentary disposition depends upon the ability of a person to have a child at some future time, it shall be presumed that a male can have a child at 14 years of age or over, but not under.)
jurisdiction: civil court or family court?
Does the Small Claims Court have jurisdiction to hear this case? As a prerequisite to granting the relief requested by the claimant, I am required to find that her pregnancy resulted from a sexual encounter with the defendant. In a filiation proceeding to establish a father’s liability for the support of a child born out of wedlock, a similar finding must be made. Section 511 of the Family Court Act states that: “the family court has exclusive original jurisdiction in proceedings to establish paternity”. Does it follow that this court lacks jurisdiction to hear this case because the Family Court has jurisdiction? I think not. This case revolves predominantly around common-law issues of tort liability and it differs vastly from a filiation proceeding because here the pregnancy was terminated.
In a case similar to this one, a woman sued a man in Family Court for the cost of her abortion. The court noting the mandate of section 514 of the Family Court Act (“The *943 father is liable to pay the reasonable expenses of the mother’s confinement and recovery and such reasonable expenses in connection with her pregnancy as the court in its discretion may deem proper”), denied the plaintiff standing to sue and dismissed the action. That court reasoned that since there would be no “mother” or “father” of an aborted fetus, as contemplated by the statute, the action could not be maintained. (Matter of Genevieve L. v Pierre T., 108 Misc 2d 149; see, also, Matter of Barbara B. v Glen S., 70 Misc 2d 728; contra Matter of Gladys C. v Robert L., 61 Misc 2d 381.) Since the primary focus of article 5 of the Family Court Act is the protection of the welfare of the illegitimate child (Matter of Geraldine K. v Elliot D.B., 99 Misc 2d 720), the decision mandating an actual birth as a predicate for relief in the Famiy Court is sound.
Matter of Genevieve L. v Pierre T. (supra) also held that it was too late for the petitioner to start a filiation proceeding under subdivision (a) of section 517 of the Family Court Act since that action must be commenced either while the mother is pregnant or after the birth of the child, but not after the termination of the pregnancy.
Although Matter of Genevieve L. v Pierre T. (supra) established that a woman who undergoes an abortion has no right to sue the putative father in Family Court for her out-of-pocket expenses in connection with the abortion, it never addressed the issue of whether other courts may exercise jurisdiction in a similar case. Since that case stated that article 5 was not intended to cover the situation where a pregnancy was voluntarily terminated by abortion, it is reasonable to assume that the enactment of article 5 never removed, by way of pre-emption, the claimant’s right to seek relief in other courts. This conclusion is bolstered by the fact that, in this case, the plaintiff’s claim is based upon common-law theories of tort and fraud rather than a right created by statute as would be the case in a Family Court proceeding. Accordingly, I hold that this court has jurisdiction to hear this case. (Cf. State of New York ex rel. Spence-Chapin Servs. to Families & Children v Tedeno, 101 Misc 2d 485.)
A comparison of the purposes of the Family Court with that of the Small Claims Court provides further support for *944 this conclusion. The purpose of a filiation proceeding (Family Ct Act, art 5), is to protect the welfare of an illegitimate child. In this case, the interest to be protected is that of the claimant herself. The role of the small claims forum is to perform “substantial justice” between the parties. (CCA, § 1804.) To effectuate this purpose, the court is obligated, according to rules of substantive law, to assist litigants to develop the facts that surround their claim and defenses. (Buonomo v Stalker, 40 AD2d 733; Javeline v Long Is. R.R., 106 Misc 2d 814; Faby v Air France, 113 Misc 2d 840.) If I were to dismiss this claim a substantial injustice would result.
LEGAL LIABILITY
The claimant contends that the defendant’s false assertion as to the state of his fertility is a fraudulent misrepresentation.
To constitute fraud there must be a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce him to act upon it, causing injury. (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112.) The essential elements of a fraud action are (1) material misrepresentation of existing fact, (2) scienter, (3) reliance, and (4) causation. (Van Alen v Dominick & Dominick, 441 F Supp 389, affd 560 F2d 547.) Claims of fraud must be established by clear and convincing evidence. (Stephenson v Lord, 72 AD2d 857.)
The defendant’s representation to the claimant that he was sterile was a material misrepresentation of fact. The claimant’s reliance on this statement has been established, since I believe her testimony that she would have used a diaphragm in the absence of this representation. Considering such factors as the length of time the parties had known one another, the regularity with which they saw each other, the degree of intimacy between them and the seriousness to the claimant of the issue of birth control and of an unwanted pregnancy, I hold that she was entitled to trust the defendant’s statement. Her reliance was reasonable and justified. (See Lanzi v Brooks, 54 AD2d 1057, affd 43 NY2d 778.) Had their lovemaking resulted from a more *945 casual encounter, I might have resolved the issue of- relionce differently.
The failure to use any birth control during sexual intercourse vastly increased the risk that she would become pregnant, which is indeed what happened. This substantial increase in the risk that a foreseeable event would occur is sufficient to establish proximate cause. (Restatement, Torts 2d, § 281, Comment e; § 442 B, Comment b.) While it is true that the alternative methods of birth control which the claimant would have used had she not relied upon the defendant’s misrepresentation are not 100% effective, these methods are far superior to sexual intercourse without the use of any contraception. Therefore the remote chance the pregnancy might have resulted in any event is not sufficient to deny the claimant recovery.
Although the claimant has sustained her burden of proving a material misrepresentation, reasonable reliance and causation of the resultant injury, she has not shown by clear and convincing evidence that the defendant possessed the state of mind that is required for a finding of fraud and deceit.
In a paternity suit (Matter of Pamela P. v Frank S., 110 Misc 2d 978), the Family Court refused to impose liability for child support on the father because the mother had deliberately and fraudulently misrepresented to him that she was using contraception in order to accomplish an undisclosed scheme to have a baby by him. This case differs significantly. There is no indication here that the defendant’s belief, though erroneous, was. anything but honest. While it is true that the defendant stated that he was sterile for the very purpose of having the claimant rely on it, there is no proof that this statement was spoken recklessly or with knowledge of its falsity. The question remains however whether the defendant was negligent and if so whether liability exists for a negligent misrepresentation.
To a limited degree the law recognizes a cause of action for negligent misrepresentation. (Bivas v State of New York, 97 Misc 2d 524.) “ ‘Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information. * * * There must be knowledge or its *946 equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience that one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care. [International Prods. Co. v Erie R.R. Co., 244 NY 331, 338.]’ ” (Bivas v State of New York, supra, at p 527.) As previously discussed, the parties had an intimate relationship. The defendant knew that the claimant was relying on the statement concerning his sterility. Neither wanted the claimant to become pregnant. On the basis of the testimony, I hold that the defendant owed a duty to give accurate information to the claimant on the subject of his sterility. Therefore, his representation of sterility, though made with an honest belief as to its truth, constitutes negligence because of his lack of reasonable care in properly ascertaining the true facts and informing the claimant as to them. (Prosser, Law of Torts [4th ed], p 704.)
The defendant had a duty to take further steps to ascertain the truth regarding his condition or instead to use contraceptives. He did not and this is the basis for imposing liability for the damages incurred by the claimant which" were proximately caused by his negligence.
It appears that the sexual encounters of the litigants (one married, one not) constituted the crime of adultery (Penal Law, § 255.17), and would have provided civil grounds for a divorce or separation against the defendant by his wife (Domestic Relations Law, §§ 170, 200). The court must consider the possible impact of the adulterous relationship in which the parties were engaged in deciding whether the claimant may be barred from seeking the relief requested based upon the doctrine of “unclean hands” (see Jensen v Barber S. S. Lines, 110 Misc 632). “ ‘Clean hands’ is a legal euphemism which refers to the acceptability, cleanliness, and decency of the claim put forth. It means that a claim tainted with deceit or impurity of motive, which if of decent character would perhaps receive approval, will unhesitatingly be ignored.” (20 NY *947 Jur [rev ed], Equity, § 103.) Since there appears to be few reported instances involving the enforcement of section 255.17 of the Penal Law during the past 30 years, it would seem that to invoke it in this civil case in which the innocent spouse is not a party would result only in injustice to the claimant. I therefore hold that the equitable doctrine of “clean hands” should not be applied here.
HARM
Injury or harm is a necessary element of a cause of action in negligence. (Prosser, Law of Torts [4th ed], p 143.) Has the claimant who experienced an unwanted pregnancy and an abortion, been harmed? If I decide that she has, and award damages, am I not implicitly stating that the conception of a life may be under certain circumstances harmful?
A recent spate of cases seeking damages against medical professionals where their allegedly negligent action or inaction in surgical procedure, diagnosis, or communication of facts and risks caused unwanted conceptions or births of healthy or unhealthy children is analogous. In one class of cases (called “wrongful birth” cases), the parents themselves as plaintiffs seek damages for the birth of a child, healthy or otherwise, arguing that had it not been for the medical negligence of the defendant, the child would either not have been conceived or would not have been born. These cases state valid causes of action. (Becker v Schwartz and Park v Chessin, 46 NY2d 401.) A second category of cases (denominated “wrongful life” suits) involve suits in the infant’s own right in which it is argued that if the medical negligence of the defendant had not occurred, the infant would not have been born. Suits of this type do not state a valid cause of action for two reasons. First, the court in attempting to resolve the vexatious issue of harm, refused to answer the essentially philosophical question of whether it is better to be born or not to be born. (Park v Chessin, supra, at p 411.) Second, the damages were considered to be speculative because the court would have applied a standard of placing the infant in the same position he would have occupied in the absence of negligence. The court stated (p 412) that it was unequipped to measure the value between life and nonexistence.
*948 This case resembles cases involving the “wrongful birth” of a child, such as Sorkin v Lee (78 AD2d 180, opp dsmd 53 NY2d 797). There, the doctor who negligently performed a vasectomy was held liable to the plaintiffs for the expenses of the mother’s care and treatment during pregnancy and delivery and for her pain and suffering. Here, as in Sorkin, the would-be mother is the party in interest. Her claim is that had the defendant not negligently misrepresented his condition, she would have used contraception and therefore would not have become pregnant. Secondly, she asks for compensation for damages personally suffered by her. The only difference between this case and those involving suits for “wrongful birth” is that here the defendant on which liability is sought to be imposed is the putative father.
The malpractice that occurred in Sorkin v Lee (supra) was a negligently performed vasectomy. Recovery for the reasonable expenses of the pregnancy was permitted. Here, the defendant misrepresented the state of his fertility to the claimant, upon which she relied. He, too, should be responsible for the reasonable expenses she incurred as a result. The facts that the claimant chose to abort the pregnancy legally in this case (see Penal Law, § 125.05, subd 2) does not alter this result, for Sorkin v Lee (supra) clearly indicated that the defendant would have been liable for the costs of an abortion, had the plaintiff there chosen to abort.
Under the facts in this case, it would be incredible and intolerable to state that a woman who becomes pregnant against her wishes and then aborts, has not been harmed. I hold that she has. The fact that her choice of an abortion is purely a personal one (Roe v Wade, 410 US 113, reh den 410 US 959), does not alter the fact that she has suffered harm resulting from the conception, pregnancy, and subsequent abortion. (See, generally, Carey v Population Servs. Int., 431 US 678.) This decision does not apply to the issue of whether in the absence of negligence a woman is entitled to be reimbursed for all or part of the costs of an abortion under some other theory of liability from the man who caused her pregnancy.
*949 DAMAGES
Claimant demands damages in the amount of $1,500, the jurisdictional limit of this court (CCA, § 1801). Having decided that the claimant is entitled to recover damages from the defendant, each item of damage alleged to have been incurred by the claimant must be examined and computed. The remedy afforded an injured party in negligence is . designed to place that party in the position he would have occupied but for the negligence of the defendant. (Martin v Dierck Equip. Co., 43 NY2d 583, 589.) Therefore, the claimant is entitled to recover damages, if adequately proven, that will restore her to the position she would have occupied had she not become pregnant.
First, the claimant requests reimbursement for the costs of the abortion in the amount of $200. She has provided this court with a hospital bill. This amount is reasonable (see Family Ct Act, § 514) and the abortion is directly attributable to the negligence of the defendant. Claimant is entitled to recover this amount. Similarly, she should recover the sum of $4.35 (for which a receipt was produced) expended for taxi fare to the hospital on the day on which the abortion was performed.
The claimant next requests $500 representing 10 days’ loss of work at $50 per day on account of morning sickness prior to the abortion, and physical discomfort as a result of the abortion. In support she submits an income statement indicating that for the week ending February 7, 1982 she worked only 7Va hours (equivalent to one day) at a total salary of $52.50. She is entitled to recover for four days of lost work or $210. In any event, this court may, in its discretion, limit recovery to “reasonable” amounts, which this court believes here to be four days’ lost wages. (Cf. Family Ct Act, § 514.)
The claimant, who stated that her personal appearance is very important to her, complained that she encountered certain negative changes in her physical appearance as a result of the pregnancy. In particular, she testified that she had become very upset because the pregnancy had caused her breasts to sag and her figure to take a turn for the worse. Even admitting that pregnancy causes certain hormonal changes in women which may have physical mani *950 festations, this fact alone, without proof of specific damage, may not be the basis of a finding of injury. The claimant’s proof as to this claimed item of damage failed in all respects. She did not prove that the alleged physical changes were attributable to this pregnancy (rather than prior pregnancies or age) or that the damage was of an irreversible nature.
Finally, the claimant requests recovery for pain and suffering occasioned as a result of becoming pregnant and having an abortion. This recovery should be permitted. There is no reason to differentiate this case from any other negligence case, where such recovery is allowed. Following this reasoning Sorkin v Lee (supra) permitted recovery for the plaintiff’s pain and suffering in a “wrongful birth” case.
The claimant testified that she was emotionally distressed as a result of becoming pregnant, having an abortion and because her relationship had deteriorated. She sought professional psychological help. She has, however, submitted no claim for reimbursement for the cost of the therapy sessions. If her distress was attributable to her emotional upset from the pregnancy and abortion, and not from external causes, damages therefore may be awarded. (Matter of Anonymous v Anonymous, 48 Misc 2d 794.) I believe that she suffered considerably as a result of facing the trauma of an unwanted pregnancy. Emotional distress is clearly a foreseeable and proximate consequence of an unwanted pregnancy that has been aborted. On the basis of the evidence, I calculate this pain and suffering to be $150.
The claimant testified that part of her pain and suffering resulted from the deterioration in her relationship with the defendant subsequent to her pregnancy and abortion. On this theory, she would be alleging that the defendant’s negligence which precipitated her pregnancy also proximately caused their affair to terminate. I do not accept this theory. First, there are many factors in a romantic relationship that make cause and effect incomprehensible. The claimant has failed to prove that the defendant’s negligence, as opposed to some other factor, was the legal cause of her suffering. Second, affection and love are often transitory and mercurial. This may be stated in terms of the tort *951 doctrine of assumption of risk: one who enters a love relationship assumes the risk that the feelings and emotions of the other party may change. (See Prosser, Law of Torts [4th ed], p 439.) People are not bound by an implied contract or by a legal duty to maintain a consistency of feelings or emotions to a present lover. This conclusion is bolstered by the abolition of causes of action in New York (see Civil Rights Law, § 80-a) for alienation of affection, criminal conversation, seduction and breach of contract to marry.
The claimant is entitled to $200 for the cost of the abortion, $4.35 for transportation, $210 for loss of earnings, and $150 for pain and suffering — a total of $564.35.
Judgment for the claimant shall be entered in the sum of $564.35.