OPINION OF THE COURT
Herbert Kramer, J.
Does a tenant have a duty to terminate a tenancy and vacate premises, in mitigation of damages caused by his landlord’s intentional infliction of emotional harm?
After the verdict of $50,000 in compensatory damages and $15,000 in punitive damages, the jury required mitigation of 60%. The respondent thereupon moved for judgment, absent such mitigation.
In a case of first impression, this court holds that the doctrine of mitigation as an expression of public policy is not applicable at bar.
FACTS
Yokley, the respondent tenant herein, moved into the Clark wing of the St. George Hotel in 1976. Due to the substandard conditions of the apartment, including that caused by renovation of a nearby hotel wing, tenant accepted the landlord’s request and moved to the Studio wing.
Thereafter, respondent began to experience similar lack of services in the Studio wing. The landlord then informed tenant that the Studio wing would be closed and that he should relocate to yet another apartment in the Weller wing. After respondent refused to accept this noncomparable apártment, he was subjected to further, extreme ha *632 rassment and the deprivation of minimally required services, to wit: running water, heat, telephone service and electricity. The New York City Building Department confirmed the uninhabitable conditions therein and issued a vacate order.
Since that time, respondent has slept at various hotels and YMCA’s, although retaining possession, and some furniture in his Studio wing apartment.
DISCUSSION
The law compels mitigation of damages in breach of contract actions. The law further imposes a like duty on the injured party to avoid or reduce damages after the commission of a tort. (Hamilton v McPherson, 28 NY 72; Restatement, Torts 2d, § 918, subd [1].) This rule illustrates the principle that individual loss must be prevented or repaired, while economic and social welfare of the community must be protected and conserved. Thus, in some instances the law of damages discourages tort victims from recouping additional losses which could have been avoided by reasonable effort and expense. (McCormick, Damages, §33, p 127; Anchorage Ind. School Dist. v Stephens, 370 P2d 531 [Alaska].)
However, the duty to mitigate damages generally is limited to actions of contract and ordinary negligence. (Richmond Hill Realty Co. v East Richmond Hill Land Co., 246 App Div 301.) The doctrine protects the wrongdoer and therefore is strictly applied. The court thus must utilize discretion in requiring mitigation by a victim, placed in a situation of potential loss or injury. (McCormick, op. cit., p 134.)
The duty of mitigation is not required in the case of intentional or malicious injuries. (Den Norske Ameriekalinje Actiesselskabet v Sun Print. & Pub. Assn., 226 NY 1.) Moreover, mitigation does not apply to cases of positive, continuing torts, such as nuisance or trespass. (Champa v Washington Compressed Gas Co., 146 Wash 190.) The rationale of this broad exception arises from the deliberate and intentional character of most continuing torts. It is an important consideration in determining what steps the victim must take to avoid injury. (McCormick, op. cit., p *633 139.) Although the tenant was a victim of an intentional, continuous and positive tort, imposing the duty of mitigation would necessarily produce an inequitable result.
Given the jury’s determination, it would be unjust and unrealistic to require the tenant to anticipate the landlord’s reckless pattern of behavior and to avoid the consequences by surrendering his leasehold. It is equally unjust, however, to allow and encourage the tenant to intentionally increase his damages, while complying with common-law rule.
The Restatement, Torts 2d (§ 918, subd [2]) thus suggests: “(2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.” This rule is in accord with the judicial goal of economic and social fairness, seeking to place an equivalent duty on all parties. This eliminates the possibility of economic waste. The tenant’s actions, in merely refusing to surrender his tenancy, were neither reckless nor heedless. His prior experience with the landlord poignantly demonstrates the reasonableness of his behavior (see Restatement, Torts 2d, § 918, Comment i).
Moreover, the tenant’s damages were psychological, thus most difficult for a layman to anticipate and mitigate in any case.
Of primary significance, public policy seeks to secure a tenant’s quiet enjoyment of his premises, and a continuing series of statutes impress this view. (Real Property Law, §§ 235-b, 223-b; Administrative Code of City of New York, § Y51-1.0; Omnibus Housing Act of 1983, L 1983, ch 403; see, also, Mari v Strater, 91 AD2d 579.) This court cannot allow a landlord to gain, indirectly through mitigation, that which the law prohibits him from doing directly. Therefore, such policy considerations further preclude as a matter of law, the jury’s determination that mitigation is proper herein. (Sorkin v Lee, 78 AD2d 180.)
In sum, respondent was under no duty to mitigate damages, absent his recklessness of which there is no evidence *634 at bar, especially in view of public policy and in view of the sole offer of mitigation by the tort-feasor.
Motion to enter judgment in unmitigated sum is granted.