Pearl Delaney, Respondent-Appellant, v Burton O. Krafte et al., Appellants-Respondents.

Third Department, January 12, 1984

**APPEARANCES OF COUNSEL**

*Mieselman, Farber, Stella & Eberz, P. C.* (*Dennis Gerard Ellis* of counsel), for Burton O. Krafte and another, appellants-respondents.

*Martin, Noonan, Hislop, Troue & Shudt* (*Thomas J. O'Connor* of counsel), for Columbia Memorial Hospital, appellant-respondent.

*Connor, Curran & Schram* (*Daniel J. Tuczinski* of counsel), for respondent-appellant.

OPINION OF THE COURT

LEVINE, J.

Plaintiff had a "D&C" operation when she was approximately eight weeks pregnant in order to abort her pregnancy. The operation was unsuccessful. This became apparent when plaintiff returned to the office of defendant Krafte, who informed her that she was then 18½ weeks pregnant. Plaintiff ultimately gave birth to a healthy baby. She then brought this action against defendants sounding in malpractice and breach of contract, and sought damages for her medical expenses, loss of employment, emotional distress and the costs of rearing her child. Upon defendant's motions to dismiss certain portions of the complaint, Special Term struck therefrom plaintiff's demands for damages for the expense of having to raise her child, for her psychological injuries allegedly caused by the obligation of bringing up an illegitimate child and for having to apply for public assistance. Special Term denied defendants' request to strike plaintiff's breach of contract cause of action. Both sides have appealed.

Initially, it should be noted that plaintiff's malpractice cause of action is viable (see *Mears v Alhadeff,* 88 AD2d 827; see, also, *Ziemba v Sternberg,* 45 AD2d 230, 231) and that Special Term's allowance of her demand for those damages found to arise directly therefrom was valid (see *Sorkin v Lee,* 78 AD2d 180, 184, app dsmd 53 NY2d 797). As to such damages, we are unpersuaded by defendants' argument that plaintiff had an obligation to mitigate her damages upon learning that she was still pregnant by submitting to a second abortive procedure. First, by the time she learned that her pregnancy had not been terminated by the D&C operation, her circumstances had changed. Well into the second trimester of her pregnancy, plaintiff arguably faced greater risk to her health in trying to abort a second time. Second, while plaintiff had a right to have an abortion at this time, this right "may not be automatically converted to an obligation to have one" (*Ziemba v Sternberg, supra,* p 233). Plaintiff's decision not to have an abortion should not affect the issue of defendants' liability (*Sorkin v Lee, supra,* p 182).

We likewise agree with Special Term's disallowance of plaintiff's claims for the expenses occasioned by raising a

normal, healthy child. Such damages have been consistently disallowed on the grounds that they are too speculative (*Sorkin v Lee, supra,* at p 181) and that they are impossible to calculate when counterbalanced by the "intangible and complex" benefits of parenthood (*Sala v Tomlinson,* 73 AD2d 724, 726, app dsmd 49 NY2d 801). The case of *Becker v Schwartz* (46 NY2d 401), relied on by plaintiff in support of her claim for child-rearing expenses, is clearly distinguishable in that the child in question there was born with Down's syndrome, with the result that she was severely retarded. The court in *Becker* (p 415) specifically limited the plaintiffs' demand for damages to a "recovery of the sums expended for the long-term institutional care of their retarded child". Clearly, the *Becker* case has little relevance to plaintiff's demand for an award covering her expenses in raising a normal, healthy child.

We also affirm Special Term's disallowance of plaintiff's claim for damages allegedly incurred as a result of the psychological trauma of having to raise an illegitimate child and of being forced to apply for public assistance. Such claims have also been specifically disallowed (*Mears v Alhadeff,* 88 AD2d 827, 828, *supra*).

Finally, Special Term erred in its failure to dismiss plaintiff's cause of action for breach of contract. A breach of contract claim arising out of the rendering of medical services will be held legally sufficient only when it is based on "an *express special promise* to effect a cure or to accomplish some definite result" (*Mitchell v Spataro,* 89 AD2d 599; emphasis added). In her complaint, plaintiff alleges an undertaking on defendant physicians' part to perform the D&C procedure to effect an abortion, but she does not allege an express promise to achieve that result. Indeed, plaintiff specifically states in the complaint that the representation made by defendant physicians that they would abort her pregnancy was implicit or implied. Accordingly, plaintiff has failed adequately to support her second cause of action sounding in breach of contract and it should have been dismissed (see *Monroe v Long Is. Coll. Hosp.,* 84 AD2d 576).

The order should be modified, on the law, by reversing so much thereof as denied the motion by defendants Burton

O. Krafte and Henry J. Noerling to dismiss plaintiff's second cause of action, said cause of action dismissed, and, as so modified, affirmed, without costs.

KANE, J. P., CASEY, YESAWICH, JR., and WEISS, JJ., concur.

Order modified, on the law, by reversing so much thereof as denied the motion by defendants Burton O. Krafte and Henry J. Noerling to dismiss plaintiff's second cause of action, said cause of action is dismissed, and, as so modified, affirmed, without costs.